Nos. 13-56797 & 13-57106

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

---

## GENESIS MERCHANT PARTNERS, LP,
Plaintiff-Appellant,

v.

## NERY'S USA, INC., ET AL.,
Defendant-Appellant.

---

## APPELLANT'S OPENING BRIEF

---

On Consolidated Appeals From a Judgment Following a Bench Trial and
a Postjudgment Order Awarding Attorney's Fees and Costs
United States District Court for the Southern District of California
No. 3:11-cv-01589-JM-WVG
The Honorable Jeffrey T. Miller

---

Raymond A. Cardozo (Cal. SBN 173263)
Dennis Peter Maio (Cal. SBN 99894)
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, CA 94105
Telephone: +1 415 543 8700
Facsimile: +1 415 391 8269

Attorneys for Plaintiff-Appellant
Genesis Merchant Partners, LP

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, Plaintiff-Appellant Genesis Merchant Partners, LP, states that it does not have any parent corporation and that no publicly-held corporation owns ten percent or more of its stock.

DATED: March 25, 2014.

s/ Raymond A. Cardozo

Raymond A. Cardozo
(Cal. SBN 173263)

Attorney for Plaintiff-Appellant
Genesis Merchant Partners, LP

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION    1

II.    STATEMENT OF JURISDICTION    6

III.    STATEMENT OF THE ISSUES    8

IV.    STATEMENT REGARDING STATUTES, ETC.    9

V.    STATEMENT OF THE CASE    9

     A.    With Cathcart's Assistance, Nascent Buys Targa    9

     B.    Genesis Funds Nascent in Exchange for Nascent's Note    11

     C.    Nascent and Targa Fall Into Financial Difficulties And Call Upon Cathcart for Assistance; Cathcart Agrees to Buy Targa From Nascent on Behalf of Nery's, A Company He Has Newly Formed    11

     D.    Nery's Buys Targa From Nascent in Exchange for Nery's Note, Which Nascent Assigns to Genesis and Which Targa Guarantees    14

     E.    Nery's Defaults on the Nery's Note and Targa Does Not Honor Its Guarantee    16

     F.    Genesis Sues Nery's, Targa, and Cathcart    19

     G.    Following A Bench Trial, The District Court Holds That Nery's And Targa Are Excused From Further Performance On The Nery's Note, Yet Allows Them To Retain The Valuable Targa Business That They Acquired Via That Note    20

**TABLE OF CONTENTS**
**(CONT.)**

H. Nery's Elects to Decline to Rescind Its Purchase of Targa, And the District Court Enters a Judgment in Which Nery's Keeps Targa, Yet Genesis Recovers Nothing on the Unpaid Loan That Financed Targa's Purchase; Genesis Appeals ........................ 24

I. The District Courts Awards Attorney's Fees and Costs to Nery's, Targa, and Cathcart, Genesis Appeals, and This Court Consolidates the Judgment and Fee Appeals ........................ 25

VI. SUMMARY OF THE ARGUMENT ........................ 27

VII. ARGUMENT ........................ 31

A. Standards of Review ........................ 31

B. The District Court Erred by Concluding That Genesis Was Not Entitled to Recover on Its Claim for Breach of Contract ........................ 32

1. The District Court Erred by Finding That Nascent Materially Breached the SPA ........................ 33

2. In Any Event, The District Court Erred by Concluding That Any Material Breach of the SPA by Nascent Barred Genesis From Any Recovery from Nery's or Targa ........................ 38

a. The District Court Erred Because the SPA Specified That the Sole Remedy Was Indemnification, So the Most Any Breach Could Support Was An Offset ........................ 38

    b.  Alternatively, The SPA and Nery's Note Covenants Were Independent Obligations, So Any Nascent Breach of the SPA at Most Gave Rise to an Offset  43

    c.  Alternatively, The Denial of Any Recovery by Genesis Impermissibly Granted Nery's a Windfall  46

  C. The District Court Erred by Concluding That Genesis Was Not Entitled to Judgment on Its Claim for Unjust Enrichment  55

  D. The District Court Erred by Awarding Nery's, Targa, and Cathcart Attorney's Fees and Costs  58

VIII. CONCLUSION  61

STATEMENT OF RELATED CASES  62

CERTIFICATE OF COMPLIANCE  63

CERTIFICATE OF SERVICE  64

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

Akin v. Certain Underwriters at Lloyd's London,
    140 Cal.App.4th 291 (2006).......................................................54

Behrendt v. Abraham,
    64 Cal.2d 182 (1966) ..........................................................49-50

Billfish, Inc. v. Campbell,
    187 F.3d 646, 1999 WL 455014 (9th Cir. 1999) ..............................55

Cataphora Inc. v. Parker,
    No. C09-5749 BZ, 2010 WL 4791643 (N.D. Cal. Nov. 17, 2010) ........50

Catlin v. United States,
    324 U.S. 229 (1945) ............................................................... 6

EnPalm, LCC v. Teitler Family Trust,
    162 Cal.App.4th 770 (2008).....................................................60

Flores v. American Seafoods Co.,
    335 F.3d 904 (9th Cir. 2003) ...................................................38

Foremost Guaranty v. Meritor Savings Bank,
    910 F.2d 118 (4th Cir. 1990) ...................................................36

Freedman v. The Rector, Wardens & Vestrymen of St. Matthias
Parish of Los Angeles,
    37 Cal.2d 16 (1951).................................................4, 47, 48, 49

Gerlinger v. Amazon.com, Inc.,
    311 F.Supp.2d 838 (N.D. Cal. 2004)...........................................56

Hinojos v. Kohl's Corp.,
    718 F.3d 1098 (9th Cir. 2013) ..................................................32

## TABLE OF AUTHORITIES
## (CONT.)

Page(s)

Hunt v. City of Los Angeles,
638 F.3d 703 (9th Cir. 2011) ...................................................... 7

International Poly Bag, Inc. v. Liu,
2009 WL 3387947 (Cal.App. 4 Dist. Oct. 22, 2009) ............... 44, 45, 46

Kuish v. Smith,
181 Cal.App.4th 1419 (2010) ...................................................... 50

Lewis Jorge Const. Mgmt, Inc. v. Pomona Unified School Dist.,
34 Cal.4th 960 (2004) ............................................................... 52

MacFadden v. Walker,
5 Cal.3d 809 (1971)................................................................. 49

Magnuson v. Video Yesteryear,
85 F.3d 1424 (9th Cir. 1996) ..................................................... 31

P.N. v. Seattle School District, No. 1,
458 F.3d 983 (9th Cir. 2006) ..................................................... 31

Paracor Fin. v. Gen. Elec. Capital Corp.,
96 F.3d 1151 (9th Cir. 1996) ..................................................... 56

Parsons v. Bristol Dev't Co.,
62 Cal.2d 861 (1965) ............................................................... 38

Rutherford v. Prudential Ins. Co. of Am.,
234 Cal.App.2d 719 (1965) ....................................................... 36

Sargon Enterprises, Inc. v. Univ. of Southern Cal.,
55 Cal.4th 747 (2012) .............................................................. 52

Starr v. Davis,
105 Cal.App. 632 (1930) ...................................................... 43, 44

Taylor v. Maddox,
366 F.3d 992 (9th Cir. 2004) ..................................................... 33

Terra Sec. ASA Konkursbo v. Citigroup, Inc.,
Nos. 10-4712, 10-4714, 2011 WL 6067260 (2d Cir. Dec. 7, 2011) ....... 36

U.S. for Use of Palmer Constr., Inc. v. Cal. State Elec., Inc.,
940 F.2d 1260 (9th Cir. 1991) ............................................... 50, 58

United States for Use and Benefit of Reed v. Callahan,
884 F.2d 1180 (9th Cir. 1989) ............................................... 31, 60

Wal-Noon Corp. v. Hill,
45 Cal.App.3d 605 (1975) ........................................................ 56

Wiechmann Eng'rs v. State ex. rel Dep't of Public Works,
31 Cal.App.3rd 741 (1973) ....................................................... 36

**Statutes**

28 U.S.C. § 1291 ................................................................ 6, 7

28 U.S.C. § 1332(a)(1) ............................................................ 6

28 U.S.C. § 1332(a)(2) ............................................................ 6

28 U.S.C. § 2107(a) ............................................................... 7

Cal. Civ. Code § 1717 ............................................................ 60

Cal. Civ. Code § 1639 ............................................................ 38

Cal. Civ. Code § 1641 ............................................................ 38

Cal. Civ. Code § 1644 ............................................................ 38

# TABLE OF AUTHORITIES
## (CONT.)

Page(s)

### Rules

Fed. R. App. P. 26.1 ............................................................... i

Fed. R. App. P. 32(a)(5) ....................................................... 63

Fed. R. App. P. 32(a)(6) ....................................................... 63

Fed. R. App. P. 32(a)(7)(B) .................................................. 63

Fed. R. App. P. 32(a)(7)(B)(iii) ........................................... 63

Fed. R. App. P. 4(a)(1)(A) ..................................................... 7

### Other Authorities

1 Bernard E. Witkin, *Summary of* Cal. *Law* Contracts §§ 852-53
(10th ed. 2005) (Westlaw) ................................................ 47, 48

34A Cal.Jur.3d *Fraud and Deceit* §§ 15-58 (Westlaw 2013) .............. 33, 34

Arthur Conan Doyle, *Memoirs of Sherlock Holmes*, "Silver Blaze,"
at 42-43 (1894), *available at* https://www.google.com/#q=silver+blaze+-sherlock+holmes+pdf&revid=427892867 (as of Dec. 23, 2013) ........ 51

# I.
# INTRODUCTION

Contract law's fundamental rule is to assure that the contracting parties receive the benefit of their bargain—but no more. The district court reversibly erred by disregarding this rule in awarding the appellees a huge windfall. This dispute concerns a borrower's and guarantor's failure to repay a $1.85 million commercial loan that they used to purchase a valuable business. The appealed judgment *both* relieves appellees of their contractual duty to repay the loan *and* allows them to keep the valuable business they acquired with the unpaid loan. This awards them a gross windfall, in violation of settled contract law, and should be reversed.

In 2007, Nascent Wine Company, Inc. (Nascent) retained John Cathcart, an experienced businessman and mergers and acquisition consultant, to assist Nascent in acquiring food distribution companies. With Cathcart's assistance, Nascent acquired appellee Commercial Targa, S.A. de C.V. (Targa), a Mexican cheese distribution company. In March 2008, appellant Genesis Merchant Partners, LP (Genesis), a private equity fund, lent $1 million to Nascent to enable Nascent to fund Targa's operations. The loan was secured by Nascent's assets, including Targa.

In 2009, Nascent again turned to Cathcart for help with Nascent's and Targa's financial problems. As part of a plan to expand Targa, Cathcart formed appellee Nery's USA, Inc. (Nery's), and proposed that Nascent sell Targa to Nery's. A deal was thus arranged whereby (1) Nery's acquired Targa by giving Nascent a $1.85 million promissory note (the Nery's Note), (2) Targa guaranteed the Nery's Note, and (3) Nascent assigned to Genesis the right to the Nery's Note payments until Nascent's debt to Genesis was satisfied.

After Nery's bought Targa, Nery's made only three payments on the Nery's Note, and Targa refused to honor its guarantee. To recover the unpaid debt, Genesis brought the action below against Nery's, Targa and Cathcart (as an alter ego). The district court granted Cathcart summary judgment on the alter ego claim (which is not challenged in this appeal), and the matter proceeded to a bench trial on Genesis's claim for breach of contract against Nery's and Targa. The district court granted judgment to Nery's and Targa on the contract claim, ruling: (a) as Nascent's assignee, Genesis stood in Nascent's shoes; (b) Nascent materially breached the contract by not disclosing or misrepresenting to Nery's Targa's assets and liabilities; (c) Nascent's material breach excused Nery's and Targa from

further performance under the Nery's Note and entitled them to judgment. Adding insult to injury, the court then awarded attorney's fees and costs to Nery's, Targa, and Cathcart as prevailing parties.

This judgment and the fee award rest on four reversible errors.

*First*, the district court's material breach analysis failed to account for Cathcart's position on both sides of the Targa transaction. Since Cathcart had plenary access to whatever information he desired concerning Targa's assets and liabilities, any Nascent non-disclosure or misrepresentation could not have been material to Nery's decision to buy Targa. Nery's, acting through Cathcart, could not have *justifiably* relied on any such misrepresentation or non-disclosure.

*Second*, even if the material breach finding could be sustained, the district court's remedy must be reversed because the remedy allows Nery's and Targa to repudiate the Nery's Note's obligations, while also retaining the Note's benefits. Whether California's contract law permits this remedy is an issue of law, reviewed de novo. The law forbids that remedy because it leaves Nery's and Targa in a better position than their bargain:

The judgment permits them to walk away from the Nery's Note, *while keeping the valuable business they purchased with that Note*.

It was certainly not the bargain of the parties to give Nery's a business for free. More than sixty years ago, Justice Roger Traynor explained that a material breach of contract does not bar the breaching party from recovery when, like here, the denial of recovery would grant the non-breaching party a windfall. *Freedman v. The Rector, Wardens & Vestrymen of St. Matthias Parish of Los Angeles*, 37 Cal.2d 16 (1951).

True, a material breach may excuse further performance, but only if Nery's rescinded the Nery's Note and returned Targa to Genesis. *Or*, Nery's could affirm that Note, keep Targa and offset Nery's damages for the breach against its Note covenants. Here, Nery's declined to rescind, so it affirmed the Note. Yet, the trial court did not perform the required offset and instead entered Nery's proposed judgment that erroneously allowed Nery's and Targa to walk away from their Note payment covenants, while retaining the Note's benefits—the valuable Targa business.

*Third*, the court also erred in denying Genesis' unjust enrichment claim. A party may claim unjust enrichment even in the presence of a valid contract; it simply cannot recover under both the breach of contract and unjust enrichment theories. Since Genesis was denied recovery on the contract clam, it was entitled to an unjust enrichment award. Otherwise, Nery's would reap an unjust enrichment if it were allowed the windfall of retaining Targa while being excused from its obligations under the Nery's Note. Nery's enrichment is particularly unjust because Genesis agreed to forbear from foreclosing on Targa to enable Cathcart to transfer Targa to Nery's and then turn around Targa's business. Cathcart succeeded in turning around Targa. Yet, Genesis—whose forbearance facilitated the turnaround—is deprived *any* recovery based on the ruling that throws out the Nery's Note and keeps the valuable Targa business in Nery's hands. That result is grossly unjust.

*Fourth and final*, reversal of the judgment on any of the above grounds also requires reversal of the attorney's fees and costs award. That award rested on a determination that Nery's, Targa, and Cathcart prevailed on the contract claim. Reversal on the above grounds, however, establishes Genesis as the prevailing party on the contract claim against

Nery's and Targa. Although Genesis does not challenge on appeal the judgment in Cathcart's favor, the fee award must be reversed as to him because the award is collective and unapportioned to Nery's, Targa, and Cathcart and includes no separately sustainable award to Cathcart.

Thus, this Court should reverse and remand with directions to (1) enter the judgment for Genesis and against Nery's and Targa that follows under the correct contract law analysis, as explained below, (2) award fees and costs to Genesis and against Nery's and Targa, and (3) decide Cathcart's fee and cost claim based on the fact that he prevailed only on the alter ego issue and that Genesis prevailed on the contract claim.

## II.
## STATEMENT OF JURISDICTION

The district court had subject matter jurisdiction over the underlying action under 28 U.S.C. § 1332(a)(1), (2), because the matter in controversy exceeded the sum or value of $75,000, exclusive of interest and costs, and was between citizens of different States and citizens of a foreign state.

The judgment is an appealable final decision within the meaning of 28 U.S.C. § 1291 because it ends the litigation on the merits. *See Catlin v. United States*, 324 U.S. 229, 233 (1945). The postjudgment order awarding attorney's fees and costs is appealable within the meaning of 28 U.S.C. § 1291 under the collateral order doctrine. *See Hunt v. City of Los Angeles*, 638 F.3d 703, 719 (9th Cir. 2011). This Court has jurisdiction, under 28 U.S.C. § 1291, over the appeal from the judgment, No. 13-56797, and from the fees and costs order, No. 13-57106, because both are appealable final decisions and are not eligible for direct review in the Supreme Court.

The district court entered its judgment on September 20, 2013. Excerpts of Record (ER)/42. Genesis filed a notice of appeal from the judgment on October 16, 2013. 1ER/40. That appeal is timely. 28 U.S.C. § 2107(a); Fed. R. App. P. 4(a)(1)(A). The court entered its postjudgment fees and costs order on December 6, 2013. 1ER/13-38. Genesis filed a notice of appeal from that order on December 16, 2013. 1ER/12. That appeal is timely. 28 U.S.C. § 2107(a); Fed. R. App. P. 4(a)(1)(A). On Genesis's motion, this Court consolidated the judgment and fee appeals.

# III.

## STATEMENT OF THE ISSUES

The consolidated appeals present the following issues:

1.     Whether the district court erred by finding Nascent materially breached the contract, a finding of fact that is reviewed for clear error.

2.     In any event, whether the district court erred by concluding that a material breach of the contract by Nascent barred Genesis from obtaining any recovery whatsoever from either Nery's or Targa.    The court's conclusion is reviewed *de novo* as a conclusion of law.

3.     Whether the district court erred by concluding Genesis was not entitled to judgment against Nery's or Targa on its claim for unjust enrichment.    This conclusion is reviewed *de novo* as a conclusion of law.

4.     Whether reversal of the judgment requires reversal of the order awarding Nery's, Targa, and Cathcart attorney's fees and costs on the ground that the award rested on a determination that those three parties had prevailed on the contract claim, but the reversal of the judgment establishes Genesis as the prevailing party on the contract claim.

# IV.

## STATEMENT REGARDING STATUTES, ETC.

No statutory or constitutional provision is pertinent to this appeal.

# V.

## STATEMENT OF THE CASE

Genesis adopts the factual findings that the district court made and challenges in this appeal only certain conclusions drawn from the facts as found or resolving questions of law. Accordingly, the factual background and procedural history may be briefly summarized as follows.

## A.    With Cathcart's Assistance, Nascent Buys Targa

Nascent Wine Company, Inc. (Nascent) owned and operated various food distribution companies. 1ER/45. Sandro Piancone was Nascent's chief executive officer. 1ER/46. In 2007, Piancone retained John Cathcart as a mergers and acquisitions consultant to help Nascent acquire food distribution companies. *Id.* Cathcart was an experienced businessman with over 25 years in the area of venture capital and business start-ups, and had knowledge of and experience with taking companies public as well as arranging company buyouts and roll-ups. *Id.* Cathcart

would become a shareholder/owner of Nascent and a member of its Board of Advisors in the area of finance and business development. 1ER/69.

By early 2008, with Cathcart's assistance, Nascent had acquired nine food distribution companies, including Commercial Targa, S.A. de C.V. (Targa), a Mexican cheese distribution company in Northern Baja, Mexico. 1ER/45. Targa owned a "cut-and-wrap" plant and also owned the Nery's brand, which a Northern Baja family had developed over 25 years. *Id.* Targa licensed the right to sell cheese under the Nery's brand to a Mexican company known as Zahava, in exchange for the payment of royalties. 1ER/45-46. Zahava's license was contingent on meeting sales minimums for Nery's brand cheese. *Id.* In addition, Targa held three Mexican permits, including a permit to import cigarettes. 1ER/45.

When Nascent acquired Targa, Targa had annual sales of $7 million and annual net profits of $1.2 million, with its principal market in Northern Baja. *Id.* Nascent intended to expand the Nery's brand, then known primarily in Baja, throughout Mexico. 1ER/45-46. Upon closing the Targa acquisition, Piancone became Targa's Director General. *Id.*

**B.     Genesis Funds Nascent in Exchange for Nascent's Note**

Genesis Merchant Partners, LP (Genesis) operates as a private equity or investment fund, making secured loans to businesses. 1ER/45. In March 2008, Genesis funded Nascent with $1 million to enable it to buy cheese for Targa to sell and to push the Nery's brand throughout Mexico. 1ER/46. The loan was evidenced by a Promissory Note—the Nascent Note—that, as later modified and extended, stated a principal and accrued interest due of $1.15 million. 1ER/46; 2ER/214.[1] The Note was secured by all of Nascent's assets, including Targa and the Nery's brand. 1ER/46.

**C.     Nascent and Targa Fall Into Financial Difficulties And Call Upon Cathcart for Assistance; Cathcart Agrees to Buy Targa From Nascent on Behalf of Nery's, A Company He Has Newly Formed**

By the latter half of 2008, Targa's sales of Nery's brand cheese had declined, and Nascent found itself with insufficient capital to expand the Nery's brand nationwide throughout Mexico. 1ER/45-46. In early 2009, Piancone contacted Cathcart and explained to him the financial problems that Nascent and Targa were experiencing. *Id.*; 2ER/215. Cathcart met

---

[1] To avoid unnecessary ER bulk and because the entire transcript is part of the record on appeal, we include in the ER only cited transcript pages.

with Piancone and Nascent's Board of Directors. 1ER/46-47. Nascent's Board decided to sell Targa. 2ER/216.

In June 2009, Nascent entered into an agreement with a company Cathcart had newly formed, Nery's USA, Inc. (Nery's), to license Nery's to sell cheese under the Nery's brand in the United States. 1ER/69. In July 2009, Cathcart drafted a letter of intent for Nery's to buy Targa from Nascent for $2 million in cash. 1ER/70; 2ER/244. The parties intended that Nascent would use the cash purchase to pay its debt to Genesis, and Piancone would become a director of Nery's. 2ER/217-19, 247-48.

Nascent notified Genesis of Nascent's intent to sell Targa. Although Nascent was in default on its Note, Genesis agreed to give Nascent time so Nery's could secure funding to purchase Targa. 2ER/221-222. Cathcart and Piancone then tried to raise funds. For example, Piancone sent a putative investor a note inquiring if he would help fund a Targa purchase, and noting that in the contemplated transaction Piancone was "the seller and the buyer." 1ER/220-221.

Cathcart was able to raise only $300,000 in funding. 1ER/48. Consequently, the deal changed from a $2 million cash purchase by Nery's

to one where Nery's would buy Targa without any upfront cash and instead would only promise to repay Nascent a loan large enough to cover Nascent's indebtedness, and Targa would guarantee the loan  1ER/48-49.

Nascent gave Cathcart full access to any employees he sought to question, and any documents he requested.  2ER/223-26, 253.  Cathcart made multiple visits to Targa's plant, spoke with Targa's general manager, Christian Alvarez, and reviewed financial documents.  1ER/47.

Based on his due diligence, Cathcart learned Targa's financial statements were unaudited, inconsistent and unreliable.  *Id.*; 2ER/249-251. He also learned that Targa was barely operating at all, and was doing so at a loss—its monthly income was $10,000 to $15,000 while monthly expenses were $25,000 to $30,000.  1ER/47; 2ER/228, 245.  It was also apparent to Cathcart that Targa could either shut down or restart its cut-and-wrap operations and continue to receive royalties; and that Zahava likely would not meet its sales minimums for Nery's brand cheese and would thus suffer termination of its license.    1ER/47.  Alvarez did not tell Cathcart that Targa's revenues were being diverted to other Nascent companies, that its vendors were not getting paid because of the diversion,

and that Alvarez's request for checks to pay these liabilities were going unheeded. 1ER/47-48. Piancone told Cathcart that of the substantial unpaid accounts, most were stale and not necessary to pay, other than $150,000 owed to Ex-Im Bank. 1ER/47. Piancone also told Cathcart that Targa was in default on its lease and owed back rent, and that Piancone assumed the landlord would forgive any back rent owed in exchange for a new rental agreement from the new owner. *Id.*; 2ER/227, 252-53.

**D.    Nery's Buys Targa From Nascent in Exchange for Nery's Note, Which Nascent Assigns to Genesis and Which Targa Guarantees**

In February 2010, seven months after Cathcart began due diligence, Nascent, Targa, Nery's, and Genesis consummated a deal as follows:

- Nascent and Nery's executed a Stock Purchase Agreement for Nascent to sell Targa's stock to Nery's (SPA). SPA Section 2.2 provided Nery's would pay "the Purchase Price as follows: (a) assume the accounts payable not to exceed $150,000 [;] (b) a note payable to [Nascent] in the amount of $1,850,000 due and payable on or before August 1, 2011." 1ER/51; 2ER/155.

- SPA Section 3 recited representations and warranties by Nascent. In Section 7(k), Nery's acknowledged it had

satisfied itself through due diligence of Targa's legal, financial and business affairs. In Section 8.1(a), the SPA provided Nascent would indemnify, defend and hold harmless Nery's and Targa from losses arising from or breach of the representations and warranties, or of the covenants or agreements made by Targa or Nascent, or any indemnification obligations related to Taxes. 1ER/51-53; 2ER/155-56, 176-78, 260.

- In Section 8.5, the SPA added that indemnification was the exclusive remedy for all parties for all claims and in lieu of any contract or tort rights. Section 8.3 specified that Nery's was required to give prompt written notice of any indemnification claim, and Section 9.5 specified how to give the required notice. Section 8.4(b) provided that the indemnifying party was not required to pay any amount until there was a "final determination" of the loss. 1ER/53-54; 2ER/178-82.

- Genesis was not a party to the SPA, and thus made no representations and warranties. 1ER/55.

- Nery's executed a Promissory Note in favor of Nascent in the principal amount of $1.85 million with interest at 10 percent a year—the Nery's Note. 1ER/54.

- Targa executed a Subsidiary and Affiliate Guarantee Agreement—the Targa Guarantee—in favor of Nascent for the Nery's Note. 1ER/55. Piancone signed the guarantee on Targa's behalf, and became a director of Nery's after the deal closed. *Id.*; 2ER/228-31, 254-56.

- Nascent and Genesis entered into a Collateral Assignment of Contracts, which entitled Genesis to receive payments due to Nascent from Nery's under the Nery's Note until Nascent's indebtedness to Genesis under the Nascent Note was satisfied in full. 1ER/55.

- Nascent executed a Direction Letter providing for Nery's to make payments due to Nascent under the Nery's Note directly to Genesis. 1ER/56.

E.     **Nery's Defaults on the Nery's Note and Targa Does Not Honor Its Guarantee**

After Nery's bought Targa in February 2010, Targa's revenues increased substantially. 1ER/65.

In April 2010 and May 2010, Nery's made two monthly payments of $15,416.67 each to Genesis under the Nery's Note. 1ER/59. Third parties also made claims against Targa. 1ER/57-58. For example, in

April 2010, the Mexican government asserted Targa owed a $285,000 tariff relating to the period before Nascent had acquired Targa. 1ER/58; 2ER/233-34. The government had never provided Targa notice of this alleged liability during the period that Nascent owned Targa. 2ER/234. Targa challenged the lien and had it dismissed in April 2011. *Id.* Neither Nery's nor Targa paid any amount under this claim. *Id.*; 2ER/241.

In July 2010, Nery's stopped making payments under the Nery's Note. 1ER/59. Targa did not honor its Guarantee. Thus, Nery's and Targa were able to address Targa's accounts payable and operate its business with the benefit of the additional cash flow generated by their failure to honor the Nery's Note. 2ER/265-66.

In October 2010, Piancone sent an email that Cathcart had reviewed and approved to an entity with which Targa sought to do business. Their email stated that Targa was in sound financial position and had no liens and lawsuits that could put its assets in jeopardy. 2ER/264-65.

On December 28, 2010, after Genesis urged Nery's to resume monthly payments, Cathcart emailed Piancone stating:

> I have to call Tim [Doede of Genesis] and not positive
> what to say. Do I give him hope or tell him I can't do
> it? I'm not sure what they'll do, but the payment
> (before year end) will take off a lot of pressure while
> we try to take them out.

2ER/271. As Cathcart later explained, the phrase "while we try to take

them out" referenced his intent in late December 2010 to move forward

with Targa's business and pay off the Nery's Note. 2ER/272. Nery's

thus made another monthly Note payment in January 2011. 1ER/59.

Targa's profit and loss statement for the first quarter of 2011 recited

a $187,000 profit. 2ER/267-68. In 2011, Nery's enjoyed a profit based

on $38,720,676 in sales. 2ER/270. Yet, Nery's made no more payments

after January 2011 under the Nery's Note. 1ER/59. Targa did not cover

the default under its Guarantee. Nery's thus paid Genesis only $46,250.01

via the April 2010, May 2010 and January 2011 payments on a Note that

bore a $1.85 million principal and 10 percent interest. *Id.*

According to Genesis's accountant—whose trial testimony Nery's

did not challenge [2ER/240 (declining cross-examination)]—the unpaid

balance on the Nery's Note was $2,978,682 as of June 24, 2013, and the

unpaid balance on the Nascent Note was $2,556,758.34 on that date.

2ER/236-238. Nery's accountant testified that as of the day of his trial testimony, June 25, 2013, Nery's or Targa had paid $241,122.69 in Targa liabilities that existed on or before the February 2010 Targa purchase [2ER/242]—*i.e.*, only $91,122.69 more than the $150,000 in accounts payable that Nery's was obligated to assume under the SPA.

## F.    Genesis Sues Nery's, Targa, and Cathcart

In July 2011, Genesis brought the action below against Nery's and Targa and against Cathcart as their alter ego. 2ER/296-306. Against Nery's, Targa, and Cathcart, Genesis asserted claims for breach of contract, unjust enrichment, and negligent misrepresentation; against Nery's alone, it asserted a claim for conversion. 2ER/296-303.

Nery's filed a counterclaim against Genesis, [1ER/44], and a third-party complaint against Nascent [*id.*]. The district court later dismissed the counterclaim as redundant to the other claims [*id.*] and Nascent did not respond to the third party complaint. Following motion practice, the district court granted Cathcart summary judgment on the ground that he was not Nery's or Targa's alter ego [1ER/104-106, 119], dismissed other

claims, but found a triable issue of fact on Genesis's claims for breach of contract and unjust enrichment against Nery's and Targa. 1ER/107-119.

In June 2013, the district court entered a pretrial order that stated it would try the underlying action in bifurcated fashion; in Phase 1, the court would determine whether Genesis was entitled to recover from Nery's and/or Targa under the Nery's Note; if so, it would then determine whether Nery's was entitled to any offset against what would otherwise be Genesis's recovery; and if so, it would then determine the amount of the offset and the correct measure of damages in Phase 2. 2ER/66-90.

**G.  Following A Bench Trial, The District Court Holds That Nery's And Targa Are Excused From Further Performance On The Nery's Note, Yet Allows Them To Retain The Valuable Targa Business That They Acquired Via That Note**

Over five days, the district court tried Phase 1. 1ER/45.

In briefing and oral argument, Genesis asserted, among other things:

- There was no breach of the SPA because Nery's and Targa experienced better net cash flow after the Targa purchase than their contract to pay a "Purchase Price" under which Nery's would absorb $150,000 in Targa

accounts payable and would pay a $1.85 million Note with 10 percent interest: Because Nery's paid only $91,000 in accounts payable above the agreed $150,000 sum but did not pay nearly $3 million on the Nery's Note, Nery's and Targa's cash flow was far better after the Targa purchase than what they had contractually agreed to absorb. 2ER/124-131, 273-75.

- Nery's had no right to rescind the Nery's Note because it could not justifiably rely on Nascent's representations given Cathcart's experience and plenary access to any Targa documents or employees. 2ER/126-28.

- The SPA specified that indemnification was the sole remedy for any Nascent breaches of the SPA, so Nery's could not rescind the Nery's Note but could at most offset any indemnity owed against the Note. 2ER/121.

- Nascent's SPA covenants and Nery's covenants under the Nery's Note were independent obligations, and thus the breach of one did not excuse performance of the other and at most gave rise to damages claims that had to be offset. 2ER/294-95.

- Even if Nery's was not limited to indemnification as its sole remedy and it had a right to rescission, rescission

was inconsistent with affirmance of the SPA and damages and required Nery's to elect one or the other remedy; an election to affirm the SPA could be inferred from Nery's acceptance of its benefits. 2ER/290-93.

- Even if Nery's had a right to rescind the SPA, Genesis was entitled to recover the unjust enrichment that Nery's and Targa would enjoy if Nery's was allowed to keep Targa without paying the $1.85 million plus 10 percent interest, plus the $150,000 in accounts payable it had agreed to pay to acquire Targa, and if Targa were allowed to dishonor its Guarantee. 2ER/294.

On July 26, 2013, the district court filed a statement of decision. 1ER/43-65. It found facts, including:

- In selling Targa to Nery's via Cathcart, Nascent failed to disclose the extent of Targa's assets and liabilities and misrepresented them;

- Nascent's non-disclosures and misrepresentations were not intentional; and

- "[A]ny failure of due diligence" in the sale of Targa "falls on Nascent's side of the ledger," not Cathcart's.

1ER/55-62. The district court then stated these conclusions:

- Genesis was not entitled to judgment against Nery's or Targa on its claim for breach of contract because: (1) as Nascent's assignee, Genesis stood in Nascent's shoes; (2) Nascent materially breached the SPA by failing to disclose some of Targa's assets and liabilities and by misrepresenting others; (3) Nascent's material breach of the SPA excused Nery's from further performance under the Nery's Note; and thus (4) Nery's and Targa were entitled to judgment on the contract claim;

- Genesis was not entitled to judgment against Nery's or Targa on its claim for unjust enrichment because: (1) a claim for unjust enrichment cannot lie where a valid contract exists between the parties; (2) a valid contract existed between Nascent and Nery's and Targa; and (c) although Targa's revenues had increased substantially after Nery's bought Targa, there was no evidence that Nery's was unjustly enriched; and

- Should Nery's so elect, it was entitled to rescind the SPA upon its tender of Targa's stock to Genesis and was then entitled to restitution from Genesis of the $46,250.01 that it had paid under the Nery's Note.

1ER/45, 59-65.  The district court dispensed with Phase 2, because "[t]he court has determined that Nery's request for rescission should be granted, rendering it unnecessary for the court to address Genesis's damage claims."  1ER/45.  It directed defendants to submit a judgment.  1ER/65.

**H.**   **Nery's Elects to Decline to Rescind Its Purchase of Targa, And the District Court Enters a Judgment in Which Nery's Keeps Targa, Yet Genesis Recovers Nothing on the Unpaid Loan That Financed Targa's Purchase; Genesis Appeals**

Nery's did not tender Targa's stock to Genesis or demand back the $46,250.01 it paid under the Nery's Note.  Instead, along with Targa and Cathcart, Nery's proposed a judgment that did not reference the rescission remedy and simply provided that "the Court finds in favor of Defendants' and each of them and against Plaintiff on all claims.  The Court orders that Plaintiff take nothing, the action be dismissed on the merits, and defendants Nery's USA, Inc., Commercial Targa, SA de CV, and John Cathcart are awarded fees and costs."  2ER/119G-119H.

On September 20, 2013, the district court entered a judgment in line with that proposed by defendants:  as they had proposed, the judgment (1) did not reference rescission, (2) provided Genesis recover nothing, and (3)

stated Nery's, Targa, and Cathcart were entitled to fees and costs, with the amount to be determined by motion. 1ER/41-42. On October 16, 2013, Genesis filed a timely notice of appeal from the judgment. 1ER/40.

## I. The District Courts Awards Attorney's Fees and Costs to Nery's, Targa, and Cathcart, Genesis Appeals, and This Court Consolidates the Judgment and Fee Appeals

On September 23, 2013, Nery's, Targa, and Cathcart filed a motion for attorney's fees and a bill of costs. 1ER/13. They sought $654,833 in attorney's fees and $133,100 in costs, a total of $787,933. 1ER/16, 30.

On December 6, 2013, the district court entered an order granting in part, and denying in part, Nery's, Targa, and Cathcart's requests for fees and costs. 1ER/13-38. The court incorporated earlier findings that Nery's, Targa, and Cathcart were prevailing parties on Genesis's contract claim, and that Cathcart was not Nery's and Targa's alter ego. 1ER/13-15. The court awarded Nery's, Targa, and Cathcart $525,427.33 in fees, and $14,283.74 in costs; for a total of $539,711.07. 1ER/38. In doing so, the court awarded Nery's, Targa, and Cathcart a lump sum as a group, and did not apportion any sum to any of them. *Id.*

On December 16, 2013, Genesis filed a timely notice of appeal from the fees and costs order. 1ER/12-13.

Cathcart then filed an objection to that order. 2ER/119A-F. The district court deemed the objection a motion for reconsideration and denied it. 1ER/1-5. It stated "Cathcart suggests the court found that Cathcart was entitled to an individual fee award, but mistakenly failed to include the amount of the individual award in its fee order. However, this was not an oversight as Cathcart suggests; rather, Cathcart has misinterpreted the court's decision regarding an award of fees." 1ER/3. The court noted: Cathcart had moved jointly with Nery's and Targa for a fee award and had not requested an individual award within the joint motion; nor had he provided a basis to make an individual award, inasmuch as he had been jointly represented with Nery's and Targa and he had failed to separate the fees that were incurred jointly on behalf of all three into apportioned sums that could be allocated to any individual one. 1ER/3-5.

On January 16, 2014, following Genesis's unopposed motion, this Court consolidated the appeals from the judgment and from the order awarding attorney's fees and costs.

# VI.

## SUMMARY OF THE ARGUMENT

First, the district court erred by finding that Nascent materially breached the SPA. This finding is reviewed for clear error as a finding of fact. The court's finding was clearly erroneous because it was based on an error of law. Any failure by Nascent to disclose some of Targa's assets and liabilities and any misrepresentation of others was not material to Cathcart's decision to buy Targa on Nery's behalf because Cathcart could not have justifiably relied on any nondisclosure or misrepresentation. Nor could Targa have justifiably relied in guaranteeing the Nery's Note.

Second and in any event, the district court erred by concluding that a material breach of the SPA by Nascent barred Genesis from recovering from Nery's or Targa. This point is reviewed de novo as a conclusion of law, and fails the test. Under the SPA's plain language, Nery's sole remedy for any Nascent breach was a right to be indemnified for any losses suffered due to the breach. As a result, Nery's was not entitled to rescission or to be excused from performance under the Nery's Note, but was at most entitled to offset any indemnity that Nascent owed against the amount that Nery's owed Nascent under the Nery's Note. Because the

district court erroneously found a right to rescission and excused performance under the Nery's Note, it failed to perform the legally correct offset analysis, which would have established Genesis's right to recovery.

Independently and alternatively, the SPA covenants and the Nery's Note covenants were independent obligations, so the breach of one did not excuse performance under the other. Again, under the correct law, the alleged breach could give rise only to damages that could be offset against the Nery's Note. But, the district court failed to perform this analysis—because it erroneously excused performance under the Note.

In the further alternative, irrespective of whether indemnity was the sole remedy or whether the SPA and Nery's Note covenants were independent, the district court erred in denying Genesis any recovery because that denial conferred an impermissible windfall on Nery's and Targa. To be excused from further contract performance based on a material breach, the non-breaching party must repudiate the contract and relinquish contract benefits. Or, it may affirm the contract, retain the contract benefits, and offset its damages against further contractual obligations. In electing to decline the district court's alternative rescission

remedy and in retaining the SPA's benefits—Targa—Nery's elected to affirm the SPA. Thus, Genesis was entitled to recover from Nery's and Targa because, otherwise, Nery's would reap a windfall by retaining Targa while walking away from the Nery's Note, which financed the purchase of Targa, and Targa would be relieved of its Guarantee.

Third, the district court erred by denying Genesis's claim for unjust enrichment. The court's conclusion is reviewed de novo as a conclusion of law and does not survive such review. Under California law, the presence of a valid contract does not bar a claim for unjust enrichment, but instead only precludes recovery under both theories. Since the district court denied a contract recovery, it erred in holding an unjust enrichment claim barred due to the presence of a contract claim. And since the unjust enrichment claim was not barred, Genesis was entitled to recover. Otherwise, Nery's and Targa would enjoy unjust enrichment through the windfall of retaining Targa while repaying practically nothing to Genesis under the Nery's Note, which financed Targa's purchase and operations.

Fourth, because the judgment must be reversed on one or more of the above grounds, that reversal establishes Genesis as the prevailing party

on the contract claim and thus warrants reversal of the award to Nery's, Targa, and Cathcart of fees and costs. As to Nery's and Targa, the district court's award is reviewed de novo because it was based on an erroneous conclusion of law, namely, that Nery's and Targa were prevailing parties on Genesis's claim for breach of contract. Likewise, as to Cathcart, the award must be reversed because there was no award *to Cathcart alone*, only a lump sum award *to Nery's, Targa, and Cathcart together*.

This Court should reverse the judgment and attorney's fees and costs order and remand to the district court with directions to enter judgment for Genesis and against Nery's and Targa in the amount of $2,556,758, plus 10 percent interest from June 24, 2013, plus attorney's fees and costs—as explained below. Alternatively, this Court should reverse and remand with directions to perform the proper contract remedy analysis, as also explained below. Cathcart's fee and costs claims should be redetermined on remand based solely on his success on his alter ego defense and based on Genesis's success via this appeal on its contract claim.

# VII.

# ARGUMENT

## A.    Standards of Review

Following a bench trial, a district court's conclusions of law are reviewed de novo and its findings of fact are reviewed for clear error. *Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1427 (9th Cir. 1996) ("We review the district court's findings of fact following a bench trial for clear error and its conclusions of law de novo.").

Although a district court's postjudgment order awarding attorney's fees and costs is generally reviewed for abuse of discretion, it is reviewed de novo insofar as it is predicated on a conclusion of law or applies the law to the facts.  *See P.N. v. Seattle School District, No. 1*, 458 F.3d 983, 985 (9th Cir. 2006) ("any elements of legal analysis ... underlying the district court's attorneys' fees decision are reviewed de novo"); *United States for Use and Benefit of Reed v. Callahan*, 884 F.2d 1180, 1185 (9th Cir. 1989) (a "question involving the district court's application of law to the fees request ... is an issue of law properly reviewed *de novo*").

## B. The District Court Erred by Concluding That Genesis Was Not Entitled to Recover on Its Claim for Breach of Contract

The district court concluded it was required to apply California substantive law and federal procedural law. 1ER/45; *see Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1103 (9th Cir. 2013). It then held that Genesis was not entitled to any recovery against Nery's or Targa on its claim for breach of contract because: (1) as Nascent's assignee, it stood in Nascent's shoes; (2) Nascent materially breached the SPA by failing to disclose certain Targa assets and liabilities and by misrepresenting others; (3) Nascent's material breach of the SPA excused Nery's from further performance under the Nery's Note; and thus (4) Nery's and Targa were entitled to judgment on the contract claim. 1ER/60-64.

The district court reversibly erred in finding a material breach, and independently and alternatively, in finding that such breach entitled Nery's and Targa to judgment on Genesis's breach of contract claim. The material breach finding was a clearly erroneous finding of fact. The conclusion that the material breach entitled Nery's and Targa to judgment was an independently reversible erroneous conclusion of law.

1.      **The District Court Erred by Finding That Nascent Materially Breached the SPA**

A finding of fact is clearly erroneous if it is based on an error of law. *Cf. Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004).

The district court found Nascent made nondisclosures or misrepresentations that were material to Cathcart's decision to buy Targa on Nery's behalf. This finding was based on an error of law—namely, "any failure of due diligence" in the sale of Targa "falls on Nascent's side of the ledger," not Cathcart's. 1ER/63.

Under California law, an undisclosed or misrepresented fact is material only if a "reasonable person would attach importance to its existence or nonexistence in determining his or her choice of action in the transaction in question." 34A Cal.Jur.3d *Fraud and Deceit* § 15 (Westlaw 2013). A reasonable person could attach such importance only if he or she could place "justifiable reliance" on the fact. *Id.* § 52. Reliance is justifiable "only when the circumstances [are] such to make it reasonable for" the person relying on the fact to credit the other person "without an independent inquiry or investigation." *Id.* The reasonableness of a

person's "reliance ... is judged by reference to the [person's] knowledge and experience." *Id.* § 53. If a person "fails to avail himself or herself of the opportunity" to inquire or investigate, the person "may not complain that he or she was deceived" by the other person. *Id.* § 58.

No matter what might have been true in another situation, Cathcart could not have justifiably relied on any nondisclosed or misrepresented fact. Cathcart was an experienced businessman with over 25 years in the area of venture capital and business start-ups. 1ER/46. He also brought to bear extensive knowledge and experience specific to Nascent and Targa. 1ER/69. He was a Nascent insider as a shareholder and member of the Board of Advisors. He had assisted Nascent in buying Targa. He later assisted Nascent in selling Targa to his newly formed company, Nery's. Following inquiry, he knew much about Nascent and Targa, and what he did not know, he could readily have learned by further inquiry. And, he knew all about the risk of buying Targa, inasmuch as he knew that Nascent and Targa were plagued by financial difficulties, that Targa was barely operating with its expenses exceeding its revenues, that it was far behind on its rent payments, and that Targa's financial statements were unaudited, inconsistent and unreliable. 1ER/47-48; 2ER/227-28, 246, 249-52.

Importantly, Cathcart did not establish that the allegedly undisclosed facts were not discoverable through a reasonable investigation. Far from it, he discovered them readily after the sale closed. 1ER/57-58. Nothing prevented him from conducting similar inquiries pre-closing. Because he was given full access to any documents or employees he wished relating to Targa and because seven months transpired between his July 2009 letter of intent to buy Targa and the February 2010 closing of the purchase, the accounts payable *could* have been discovered through reasonable inquiry.

In addition, that Nery's only paid $91,000 more in accounts payable above the $150,000 it had agreed to assume further shows any non-disclosures were not material. This is particularly true since the "Purchase Price" was $2,000,000 and any excess payables could be offset against the Nery's Note, and Nery's in fact did so offset and then some by declining to pay nearly $3 million in debt.

In sum, Cathcart's sophistication, that his allegations *could have* been discovered through a reasonable inquiry, and that they involved matters of modest economic significance in relation to the transaction establishes a lack of *justifiable* reliance, and hence lack of materiality. *See*

*Wiechmann Eng'rs v. State ex. rel Dep't of Public Works*, 31 Cal.App.3rd 741, 748 (1973) (where plaintiff entered into contracts without inquiring as to existence, nature and contents of any testing conducted by defendant, plaintiff could not establish justifiable reliance on non-disclosures relating to testing); *Rutherford v. Prudential Ins. Co. of Am.*, 234 Cal.App.2d 719 (1965); *Foremost Guaranty v. Meritor Savings Bank*, 910 F.2d 118, 128-29 (4th Cir. 1990) ("Having reason to investigate, but choosing not to do so, the insurers are held to all a reasonable investigation would reveal"); *Terra Sec. ASA Konkursbo v. Citigroup, Inc.*, Nos. 10-4712, 10-4714, 2011 WL 6067260, at *2 (2d Cir. Dec. 7, 2011) ("It is well established that where sophisticated business men engaged in major transactions enjoy access to critical information but fail to take advantage of that access, New York courts are particularly reluctant to entertain claims of justifiable reliance. [Citations.] In addition, this Court had made clear that the sophistication of the parties' factors into the determination of whether research, and how much, is reasonably required in any given case." (Internal quotations and citations omitted.)).

The district court erroneously focused on what Cathcart claimed he subjectively knew and did. But under the *objective* test that governed the

materiality inquiry, the question was not merely what he knew, but instead was what he *could have* discovered in a diligent inquiry. Because the court cited only Cathcart's claimed subjective lack of knowledge, and sidestepped whether he could have discovered the facts with due diligence, the court's finding that Nascent materially breached the SPA was based on an error of law. Under California law, any failure of due diligence in the sale of Targa falls on Cathcart's side of the ledger, not Nascent's. To hold otherwise would eviscerate the due diligence requirement—since the seller would be responsible for conducting the inquiry for the buyer. Not only did such a holding contradict California law, but it was particularly unreasonable here—where the buyer was also an insider of the seller and given plenary access to conduct the inquiry of his choice.

Moreover, even if one could somehow find that Cathcart justifiably relied, the record does not permit the inference that Targa was relieved from its Guarantee. Piancone, Nascent's principal, executed the Guarantee on behalf of Targa. 2ER/231. Thus, Piancone had two roles in the transaction—he represented Nascent as the seller, and Targa as the guarantor. *Id.* As a matter of law, Targa could not have justifiably relied since it acted through the same principal and is charged with the same

knowledge as Nascent. Targa remained obliged to repay the Nery's Note, and the district court reversibly erred in relieving it of that duty.

2. **In Any Event, The District Court Erred by Concluding That Any Material Breach of the SPA by Nascent Barred Genesis From Any Recovery from Nery's or Targa**

In any event, irrespective of the correctness of the District Court's material breach finding, its conclusion as to the remedy for the alleged breach was an error of law and does not survive de novo review.

a. **The District Court Erred Because the SPA Specified That the Sole Remedy Was Indemnification, So the Most Any Breach Could Support Was An Offset**

The interpretation of a written and fully integrated agreement like the SPA is a question of law, in which the court's sole task is to effectuate the parties' expressed intent by reading the contract's plain language according to its ordinary meaning and in the context of the whole. *See, e.g., Parsons v. Bristol Dev't Co.,* 62 Cal.2d 861 (1965) (interpretation of written contract is question of law); Cal. Civ. Code §§ 1639, 1641, 1644 (California rules of interpretation requiring court to ascertain intent from plain meaning of contract language); *see also Flores v. American Seafoods Co.,* 335 F.3d 904, 912 (9th Cir. 2003).

Here, the parties specified the allocation of risks in their written agreement—including a clause specifying indemnification was the exclusive remedy if Nascent breached any representations or warranties:

> Except as specifically provided elsewhere herein, the provisions for indemnification … are the exclusive remedies of [Nascent, Nery's, and Targa] arising out of or in connection with this Agreement, and shall be in lieu of any rights under contract, tort, equity or otherwise other than claims based on actual fraud or intentional breach of this Agreement.

2ER/180.   The parties also specified that Nery's was required to give written notice of any indemnity claim and the indemnity obligation was owed only when the amount of any loss was "finally determined."  *Id.*

The district court noted this exclusive remedy provision, and "accepted the undisputed evidence [that Nascent's] misrepresentation was not intentional."  1ER/53, 62 n. 20; *see also* 2ER/232 (Piancone testifies he was not aware of the undisclosed liabilities); 2ER/263 (Cathcart testifies he does not believe Piancone intentionally misrepresented anything).  Yet, the court did not explain why Nery's was not limited to the specified indemnification remedy.   The court stated that remedy was "totally illusory and fictional" in light of Nascent's failure to indemnify Nery's.  1ER/63.  But this statement erroneously disregarded three key points:

- The indemnity was owed only after written notice of an indemnity claim and after the undisclosed liabilities were "finally determined";

- Nery's never gave written notice—Cathcart instead claimed he orally advised Piancone when he discovered Targa accounts payable and Piancone said Nascent had no money to help. 2ER/259, 261-62; and

- Since Nascent's promise to indemnify Nery's and Nery's promise to pay Nascent under the Nery's Note were each simply promises to pay the other money, the agreed indemnification remedy was not illusory if, as happened here, Nery's helped itself to indemnity by ceasing payments on the Nery's Note.

The SPA language specifying the exclusive remedy is correctly applied by limiting Nery's to a right to offset any additional accounts payable above $150,000 that Nery's actually paid against its Nery's Note obligations. Moreover, if the district court had applied the correct interpretation, Genesis would have been entitled to recover on the contract claim. The unpaid balance on the Nery's Note was $2,978,682 at the start of trial. 2ER/238. Nery's accountant testified below that as of his June 25, 2013 trial testimony, Nery's or Targa had paid $241,122 in liabilities that had arisen before February 2010 [2ER/242], and the SPA specified Nery's was required to pay $150,000 in accounts payable [2ER/155]. Nery's and Targa asserted that there were other pre-February 2010

payables still owing and in dispute, and Cathcart claimed he paid other sums in cash for which there were no written claims of indemnity or other records to evidence or quantify the payments. 2ER/258.

But, the district court made no clear findings as to which payables had been paid or remained owing more than three years after the Targa purchase, and which ones could be presumed discharged, nor whether Cathcart's alleged cash payments without keeping records could give rise to an indemnity claim in light of the SPA's written notice requirements. The court declined to make such findings due to its error of law in holding that Nascent's alleged breaches entitled Nery's and Targa to rescind and made it unnecessary to decide Genesis's damages claim. 1ER/45.

In any event, regardless of how one assesses Nery's inflated claims of loss against its own accountant's concession that the sums actually paid were about $240,000, of which Nery's was obliged to pay $150,000, the range of potential loss did not remotely approach the nearly $3 million unpaid balance on the Nery's Note when the district court excused Nery's and Targa's further performance. Thus, under a correct interpretation of the SPA that properly limited Nery's remedy to a right to indemnity,

Genesis was entitled to recover because any indemnity owed paled in comparison to the unpaid balance on the Nery's Note.

This Court may perform the correct offset analysis as follows:

1.     The unpaid balance on the Nery's Note was $2,978,682 on June 24, 2013.  2ER/238.  As of that date, Nery's and Targa had paid $241,122 in accounts payable [2ER/242], and were obliged to pay $150,000 under the SPA—*i.e.*, they were entitled to an offset of $91,122.  Applying the $91,122 offset to the unpaid balance on the Nery's Note, Nery's owed Nascent $2,887,570 as of June 24, 2013.

2.  As of June 24, 2013, Nascent owed Genesis $2,556,758 under the Nascent Note.  2ER/236.  Because the amount that Nery's owed to Nascent exceeded the unpaid balance that Nascent owed to Genesis, Genesis was entitled to recover from Nery's the entire unpaid balance on the Nascent Note.  Thus, Genesis was entitled to judgment for $2,556,758 plus 10 percent interest from June 24, 2013, plus attorney's fees and costs.

The Court should direct the trial court to enter a judgment for Genesis for $2,556,758, plus interest from June 24, 2013, plus fees and

costs. Alternatively, at a minimum, the Court should reverse and remand with directions to the trial court to conduct a proper offset analysis.

### b. Alternatively, The SPA and Nery's Note Covenants Were Independent Obligations, So Any Nascent Breach of the SPA at Most Gave Rise to an Offset

The district court independently and alternatively erred by holding that Nascent's compliance with the SPA was a condition precedent to Nery's obligation to pay under the Nery's Note. Under the correct legal interpretation, the SPA and Nery's Note covenants were independent duties which could, at most, give rise to offsetting damages claim, but which could not excuse performance of the other independent obligation.

In *Starr v. Davis,* 105 Cal.App. 632 (1930), the plaintiffs sued for breach of a promissory note given by defendant to purchase the plaintiffs' retail florist business. Defendant claimed he was excused from further performance under the note because plaintiffs had breached their covenant not to engage in a similar business in the same city. The California Court of Appeal held the covenants to pay on the note and not to compete were independent obligations since they were to be performed at different times.

Recently, the California Court of Appeal applied *Starr* to reach the same result in an unpublished case similar to this one. *See International Poly Bag, Inc. v. Liu*, 2009 WL 3387947, at \*10 (Cal.App. 4 Dist. Oct. 22, 2009). There, Liu sold a plastic bag business to IPB via a transaction in which (a) Liu agreed to refrain from competing without first offering competitive opportunities to IPB and (b) IPB agreed to make payments to Liu under a promissory note. Liu breached the non-compete covenant, and IPB stopped paying on the promissory note. The trial court awarded IPB damages for Liu's breach of the non-compete provision and held that Liu's material breach excused IPB from paying Liu on the promissory note.

The court of appeal reversed the ruling that Liu's material breach excused IPB from its note obligations. Relying on *Starr*, the court of appeal held that Liu's non-compete and IPB's promissory note covenants were independent. The court of appeal added that to relieve IPB from repaying the note would grant it an impermissible windfall by allowing it to keep the contract's benefits while avoiding its burdens:

> Because this judgment affirms the continuing validity of the contract and legally binds Liu to comply with these terms, *IPB is equally bound to perform its part of the bargain and pay the*

*amount owed on the note. Any other conclusion would give IPB an arbitrary windfall that bears no connection to its claimed damages.* The parties could not have intended this result.

In reaching this conclusion, it is important to understand that IPB did not seek to rescind the contract based on a material breach.  A rescission action is "an action to recover any money or thing owing to him by any other party to the contract" (Civ. Code, § 1692), *and is dependent on a showing that the plaintiff restored the benefits received under the contract.* (Civ. Code, § 1691, subd. (b).)  A rescission extinguishes the contract.  (Civ. Code, §§ 1688, 1691.) "Rescission not only terminates further liability but restores the parties to their former position *by requiring each to return whatever he or she received as consideration under the contract, or, where specific restoration cannot be had, its value.*" [Citations.]  Thus, if IPB proved a rescission claim, it would have been entitled to terminate its payment obligations, *but would not have any continuing right to the business.*

2009 WL 3387947, at *10 (italics added).


So too here.  The SPA and Nery's Note are separate instruments, and neither contains language conditioning the covenant to pay under the Note on compliance with any SPA covenant.  To the contrary, as noted, the SPA provides that the exclusive remedy for any breach is indemnity.  Moreover, by allowing Nery's and Targa to keep Targa, the judgment enables them to retain the benefits of the contract, so they are "equally

bound to perform [their] part of the bargain." *IPB*, 2009 WL 3387947, at *10. Because the district court failed to discuss these points, it failed to explain how compliance with the SPA covenants could be a condition precedent to the Nery's Note covenants nor how Nery's could both repudiate the Note yet retain its benefits. This Court, however, reviews the contract interpretation de novo, and should hold that the SPA and Note covenants were independent, and could, at most, give rise to offsetting damages claims. As noted, *ante*, at p. 42, under the correct offset analysis, a net judgment for Genesis results.

Pursuant to the calculation at page 42 *ante*, the Court should reverse with directions to enter judgment for Genesis for $2,556,758 plus 10% interest from June 24, 2013, plus fees and costs. Or, at a minimum, the Court should remand to perform the correct offsetting damages analysis.

### c. Alternatively, The Denial of Any Recovery by Genesis Impermissibly Granted Nery's a Windfall

Independent and irrespective of whether indemnity was the exclusive remedy or whether the covenants in the SPA and the Nery's Note were independent, the judgment rests on yet another legal error—the district

court's remedy is precluded by settled contract law that entitles a non-breaching party only to the benefit of its bargain and forbids a windfall.

The district court's conclusion that a material breach by one party excuses the other from further performance was correct—in part. *See, e.g.*, 1 Bernard E. Witkin, *Summary of Cal. Law* Contracts §§ 852-53 (10th ed. 2005) (Westlaw). But the court erred in its additional conclusion that the excused performance meant that Nery's could *keep Targa and* make no more loan payments *and* that Genesis could not recover *any sum*.

In *Freedman v. The Rector, Wardens & Vestrymen of St. Matthias Parish of Los Angeles*, 37 Cal.2d 16 (1951), the California Supreme Court, speaking through then-Justice Traynor, laid down what has since been the rule under California law, namely, that a material breach does *not* bar recovery where the denial of recovery would confer a windfall.

In *Freedman*, a buyer contracted with a seller to purchase real property for $18,000. *Id.* at 18. The buyer paid a $2,000 down payment to a real estate broker, who retained $900 as a commission, and the buyer agreed to pay the balance of $16,000 into escrow within 30 days. *Id.* The buyer later wilfully repudiated the contract and demanded the return of his

down payment.  *Id.*  The seller cancelled the escrow and sold the property to a third party for $20,000. The buyer then sued the seller for breach of contract.  *Id.*  The trial court entered judgment for the seller.  *Id.*

The California Supreme Court concluded the buyer's repudiation of the contract was a "total breach"—which is a material breach, *see* 1 Witkin, *Summary of Cal. Law* Contracts § 852 (a "total … breach is of course material" (italics omitted)).  As such, the breach "would excuse performance on [the seller's] part."  37 Cal.2d at 19.

But the *Freedman* Court also concluded that the buyer was entitled to recover his down payment from the seller.  *Id.* at 23.  The Court reasoned: "Since [the seller] resold the property for $2,000 more than [the buyer] had agreed to pay for it, it is clear that [the seller] suffered no damage as a result of [the buyer]'s breach.  If [the seller] is allowed to retain the amount of the down payment in excess of its expenses in connection with the contract it will be enriched and [the buyer] will suffer a penalty in excess of any damages he caused."  *Id.* at 19-20.

The *Freedman* Court determined that it made no difference that the buyer's breach was wilful: "To permit what are in effect punitive damages

merely because a party has partially performed his contract before his breach is inconsistent both with section 3294 of the [California] Civil Code limiting the right to exemplary damages and sections 1670 and 1671 dealing with liquidated damages." *Id.* at 21-22 (fns. omitted).

Accordingly, the *Freedman* Court reversed and remanded to the trial court to retry the recovery to which the buyer was entitled. *Id.* at 23. It explained: "Since a commission of $900 was retained by the broker from the down payment it is clear that [the seller] received from [the buyer] at most $1,100. [The seller] contends, however, that there were other expenses incurred in connection with the escrow that reduced the amount of the down payment received. Since the trial court erroneously concluded that [the buyer] could recover no part of his down payment, no finding was made as to the fraction that accrued to the net benefit of [the seller]. Accordingly, a new trial limited to that issue is appropriate." *Id.*

*Freedman* thus laid down the rule that a material breach by a contracting party does not bar it from obtaining recovery from the other party. The rule is now well settled. *See*, *e.g.*, *MacFadden v. Walker*, 5 Cal.3d 809, 814 (1971); *Behrendt v. Abraham*, 64 Cal.2d 182, 187

(1966); *Kuish v. Smith*, 181 Cal.App.4th 1419, 1426 (2010); *U.S. for Use of Palmer Constr., Inc. v. Cal. State Elec., Inc.*, 940 F.2d 1260, 1262 (9th Cir. 1991) (applying Cal. law); *Cataphora Inc. v. Parker*, No. C09-5749 BZ, 2010 WL 4791643, at *2 (N.D. Cal. Nov. 17, 2010) (same).

And as noted, the Court of Appeal in *International Poly Bag,* relied on the anti-windfall principle to hold that a seller's material breach of contract did not allow a buyer to walk away from a promissory note and keep a business acquired with that note because to do so would allow the buyer to retain the contract benefits while avoiding its obligations.

So too here. Even if Nascent breached the SPA, and even if Genesis stood in Nascent's shoes, Genesis was not barred from recovering from Nery's, under its Note, or from Targa, under its Guarantee. That result confers an impermissible windfall on Nery's and Targa by enabling them to retain the contract's benefits while avoiding its burdens.

In *Freedman*, because the trial court erroneously concluded that the buyer's material breach precluded him from recovering any of his down payment from the seller, the court erroneously failed to quantify the seller's windfall from retaining the down payment. Similarly, in this case,

because the district court erroneously concluded that Genesis could recover nothing from Nery's or Targa, it did not quantify the windfall that Nery's and Targa received by retaining Targa while repaying practically nothing to Genesis under the Nery's Note.

But there is no doubt that Nery's would reap a windfall *in some amount* if it retained Targa while repaying practically nothing to Genesis under the Nery's Note. As noted, the unpaid balance on the Nery's Note was $2,978,682 at the start of trial, and Nery's and Targa had paid only $241,122 in accounts payable, of which $150,000 they had agreed to pay under the SPA. As in *Freedman*, Genesis is entitled to recover.

That Nery's reaped a windfall is also proven convincingly by evidence of what did *not* happen. *See* Arthur Conan Doyle, *Memoirs of Sherlock Holmes*, "Silver Blaze," at 42-43 (1894), *available at* https://-www.google.com/#q=silver+blaze+sherlock+holmes+pdf&revid=-427892867 (as of Dec. 23, 2013) (the fact that a "dog ... kept in the stables ... had not barked enough to arouse ... two lads in the loft" when a midnight visitor had gone "in and had fetched out a horse" proved that the "midnight visitor was someone whom the dog knew well").

In its statement of decision, the district court stated Nery's could elect to rescind the SPA upon its tender of Targa's stock to Genesis and receive back the $46,250.01 it paid under the Nery's Note. Nery's did not tender the stock, and instead it proposed a judgment that did not reference rescission and proposed only that Genesis be denied any recovery. By eschewing rescission, Nery's confirmed it is better off affirming the Targa purchase, notwithstanding Nascent's alleged breaches, than it would be in rescinding that purchase. Like the "dog that did not bark," the evidence of what Nery's did *not* do is proof positive of Nery's windfall.[2]

---

[2] Although Nery's and Targa also claimed the excess accounts payable caused other consequential losses by hampering Targa's ability to operate its business, the district court never made findings determining whether any consequential losses in fact occurred, and if so whether they are recoverable as a contract remedy. *See Lewis Jorge Const. Mgmt, Inc. v. Pomona Unified School Dist.*, 34 Cal.4th 960, 968-70 (2004) (explaining contract law limits on consequential loss claims); *Sargon Enterprises, Inc. v. Univ. of Southern Cal.*, 55 Cal.4th 747 (2012) (unestablished business may not recover on speculative lost profit claims); 2ER/257 (Cathcart testimony describing Targa as a start up in February 2010, in light of fact that it was barely operating and needed to be restarted). Moreover, Nery's and Targa's claim of consequential losses ignored that any excess accounts payables that Nery's or Targa paid were dwarfed by the massive cash flow benefits they obtained by ceasing payments on the Nery's Note. Indeed, as Genesis's trial counsel noted in his closing argument, during 2010, Nery's and Targa's paid only $93,000 in pre-February 2010 Targa payables but they failed to make $127,000 in monthly payments due under

(continued on following page)

*Freedman's* rule prohibiting contract remedies that confer a windfall on the non-breaching party is particularly applicable here because Genesis did not breach and instead was saddled with Nascent's breach due to how Cathcart and Piancone structured the Targa purchase. Rather than foreclose on Targa, Genesis permitted Cathcart and Piancone to transfer Targa to Nery's to effectuate a turn-around. Due to the Note payments that Nery's and Targa never made, Cathcart unilaterally gave himself the capital to accomplish the turn-around. For Genesis's good deed in forbearing, it was punished with a judgment that enables Cathcart and Nery's to keep Targa without repaying Genesis on the Note that purchased Targa. This is a reversible perversion of contract law remedies.

Moreover, when Nery's eschewed the district court's rescission remedy, it affirmed the contract and limited its remedy to damages for

---

(continued from previous page)

the Nery's Note. 2ER/273-75. In 2011, Nery's and Targa paid an additional $69,000 in pre-February 2010 Targa liabilities but failed to pay $184,250 under the Nery's Note. *Id.* The pre-February 2010 liabilities that Targa paid in 2012 were even lower, and the monthly Note payments that it and Nery's did not pay were even higher. *Id.* Thus, in every year after the February 2010 purchase, Nery's and Targa experienced a cash flow that was far better than their contractual bargain. Again, the conclusion is irresistible that Nery's reaped a windfall, and thus Genesis was entitled to recovery.

Nascent's alleged breaches. *See, e.g., Akin v. Certain Underwriters at Lloyd's London*, 140 Cal.App.4th 291, 297 (2006) ("Because plaintiff seeks to retain the benefits of the contract (i.e., payment of benefits under the policies), we can construe her complaint as asserting an election to affirm the contract."). Thus, the legally correct alternative to rescission was not the judgment disallowing any Genesis recovery, but was instead a remedy that affirmed the Nery's Note and offset Nery's damages. Because the court never performed the correct offset analysis, its judgment must be reversed with directions to enter judgment for Genesis for $2,556,784 plus 10 percent interest running from June 24, 2013, plus attorney's fees and costs—which is the offset that this record establishes. *See* p. 42 ante. Or, at a minimum, if the Court believes further calculation is required to perform the correct offset it should remand with directions to grant Nery's and Targa a credit against the Nery's Note for accounts payable actually paid that exceed $150,000, and to calculate the unpaid balance owing to Genesis with interest, fees and costs.[3]

---

[3] The district court stated it had "determined that Nery's request for rescission should be granted, rendering it unnecessary for the court to address Genesis's damages claim." 1ER/45. But the court failed to limit

(continued on following page)

**C.    The District Court Erred by Concluding That Genesis Was Not Entitled to Judgment on Its Claim for Unjust Enrichment**

The district court also denied recovery on Genesis's unjust enrichment claim because: (1) such a claim cannot lie where a valid contract exists between the parties; and (2) although Targa's revenues had increased substantially after Nery's bought Targa, there was no evidence that Nery's was unjustly enriched.  1ER/64-65.

On de novo review, the district court's conclusion was erroneous.

First, the district court was wrong that the existence of a valid contract precludes a claim for unjust enrichment.  California law allows pleading and proving an unjust enrichment claim even in the presence of a valid contract; it prohibits only *recovery* for unjust enrichment *in addition to* recovery for breach of contract.  As this Court held in *Billfish, Inc. v. Campbell*, 187 F.3d 646, 1999 WL 455014, at *1 n.2 (9th Cir. 1999), "California does not ... preclude pleading both a claim for breach of

---

(continued from previous page)

Nery's to rescission, and instead added the erroneous alternative of judgment on the contract claim.  As shown, the correct alternative to rescission required affirmance of the Nery's Note and an offset analysis.

- 55 -

express contract and a claim for unjust enrichment; it only prevents recovery under both." Not to the contrary are *Paracor Fin. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151 (9th Cir. 1996), and *Gerlinger v. Amazon.com, Inc.*, 311 F.Supp.2d 838 (N.D. Cal. 2004), which the district court cited in support of its position. *Gerlinger* relies on *Paracor*; *Paracor* relies on *Wal-Noon Corp. v. Hill*, 45 Cal.App.3d 605 (1975); and *Wal-Noon* stands only for the proposition that "[t]here cannot be a valid, express contract and an implied contract, each embracing the same subject matter, existing at the same time," *id.* at 613. That proposition, of course, is inapplicable. Here, there is only an express contract.

Second, the district court was wrong that there was no evidence that Nery's was unjustly enriched. The SPA stated Nery's would pay $1.85 million plus 10 percent interest to acquire Targa and would pay $150,000 of Targa accounts payable. Instead of that bargain, Nery's paid only $47,000 under the Note, $241,122 in Targa accounts payable, and walked away from $2.9 million plus in unsatisfied debt, while keeping Targa. For $91,000 in excess payables, and $47,000 in Note payments, Nery's obtained a business that it had agreed to pay $2 million plus 10 percent interest to buy. That Nery's was unjustly enriched is confirmed by the

fact that the district court afforded it the option to unwind the Targa purchase, and yet Nery's declined to so elect. Like the "dog that did not bark," Nery's failure to rescind confirms that it was unjustly enriched.

In finding to the contrary, the district court stated "Nery's has expended in excess of hundreds of thousands of dollars to liquidate Targa's undisclosed obligations. Although it appears that revenues substantially increased no evidence indicates that profit levels increased after Nery's acquisition of Targa." 1ER/65. This analysis not only ignored the evidence of Targa's profits and revenues [2ER/267-68], but also ignored that Nery's had agreed the Targa "Purchase Price" would include paying $150,000 in obligations and a $1.85 million loan principal plus 10 percent interest. Under the agreement, any post-closing Targa profits were to be earned only above satisfaction of $2 million plus in obligations. Targa's post-purchase profits were adversely impacted by Zahava's continuing to sell Nery's brand cheese after Targa terminated Zahava's license, and by new taxes, and other events that had nothing to do with Nascent's covenants. 2ER/255-56. But Targa's profits would have been even lower if all parties had adhered to their bargain. Nery's had to pay $241,122 in Targa obligations instead of the $150,000 it agreed to pay, but Nery's and

Targa avoided the $2.9 million unpaid balance on the Nery's Note. Because the obligations Nery's and Targa avoided far exceeded any excess obligations they incurred, they were unjustly enriched.

## D. The District Court Erred by Awarding Nery's, Targa, and Cathcart Attorney's Fees and Costs

Resting on its conclusion that Nery's, Targa, and Cathcart were prevailing parties on the contract claim, the district court awarded them attorney's fees and costs of $525,427.33 and $14,283.74, respectively, for a total of $539,711.07; the award was to Nery's, Targa, and Cathcart as a group, without apportionment among them. 1ER/13-38.

Insofar as it awarded fees and costs to Nery's and Targa, the order was based on an erroneous conclusion of law—namely, that Nery's and Targa were prevailing parties on Genesis's contract claim. Thus, upon reversal of the judgment in favor of Nery's and Targa, the fee and costs award in their favor must be reversed as well. *See Palmer Constr., Inc.*, 940 F.2d at 1264 (because appellate decision concluded appellant should have prevailed on contract claim, prevailing party fee award must be reversed).

Moreover, no fee award to Cathcart may be sustained. Even though Cathcart prevailed on his defense that he was not Nery's and Targa's alter ego, and even though Genesis does not challenge that finding on appeal, the district court did not make any separate award *to Cathcart* that was premised solely on his success on the alter ego issue. The only award it made was the lump sum *to Nery's, Targa, and Cathcart* predicated in large part on its erroneous conclusion that they succeeded on the contract issue.

Shortly after he was dismissed on summary judgment, Cathcart sought approximately $272,000 in fees and costs. 1ER/4, 14-15. But the district court declined to award any fees at that interlocutory pre-judgment stage. 1ER/14-15. Later, when the court rejected Cathcart's post-judgment objection to the collective $539,711 award, the court noted that the lump sum fee and costs award included fees and costs that were incurred both after Cathcart was dismissed from the case, and jointly in defense of Cathcart, Nery's and Targa. 1ER/3-4.

Since the expenses to defend Nery's and Targa are both non-recoverable, and are not separately identifiable but are incorporated without apportionment into the collective fee and costs award [*id.*], there is

no amount that may be sustained as to Cathcart alone. Rather, the collective award must be reversed and the matter remanded for determination of what fees and costs Cathcart may recover based solely on his success on the alter ego issue and notwithstanding Genesis's success on the contract issue. *See Callahan*, 884 F.2d at 1186.

On remand, the district court should disallow Cathcart fees incurred on any issue apart from alter ego. As this appeal should establish, *Genesis* is entitled to recover on its breach of contract claim, so it is entitled to its fees and costs on that claim. An award to Cathcart would be unreasonable if it compensated work on anything but the alter ego issue because that would undermine Genesis's fee entitlement for its successful contract claim, and Cathcart succeeded only on alter ego. *See EnPalm, LCC v. Teitler Family Trust*, 162 Cal.App.4th 770, 775 n.5 (2008) (under Cal. Civ. Code § 1717, "it seems not just equitable, but in line with the reasonable expectations of contracting parties, to deny attorney's fees that were not reasonably necessary").

# VIII.

## CONCLUSION

For the reasons stated, this Court should reverse the judgment of the district court and its order awarding attorney's fees and costs and remand the case to that court with directions to either enter judgment for Genesis for $2,556,758 plus 10 percent interest running from June 24, 2013, plus attorney's fees and costs. Or, if the Court believes further calculations are required, it should remand with directions to determine the amount of the recovery to which Genesis is entitled against Nery's and Targa, to determine a fee award in Genesis's favor and against Nery's and Targa and to determine a reasonable award of attorney's fees and costs solely in Cathcart's favor and compensating only work on the alter ego issue.

DATED: March 25, 2014.

REED SMITH LLP

By   s/Raymond A. Cardozo

Raymond A. Cardozo (Cal. SBN 173263)
Dennis Peter Maio (Cal. SBN 99894)

Attorneys for Plaintiff-Appellant
Genesis Merchant Partners, LP

## STATEMENT OF RELATED CASES

Plaintiff-Appellant Genesis Merchant Partners, LP, states that it knows of no related cases pending in this Court.


DATED: March 25, 2014.

REED SMITH LLP


By ___s/Raymond A. Cardozo___

Raymond A. Cardozo (Cal. SBN 173263)
Dennis Peter Maio (Cal. SBN 99894)

Attorneys for Plaintiff-Appellant
Genesis Merchant Partners, LP

# CERTIFICATE OF COMPLIANCE

I certify as follows:

1.   This Appellant's Opening Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 12,109 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.   This Appellant's Opening Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010 in 14 point CG Times.

In preparing this Certificate, I have relied on the word count of Microsoft Office Word 2010, the word-processing system used to prepare this Appellant's Opening Brief.

DATED: March 25, 2014.

                                  s/ Raymond A. Cardozo

                                  Raymond A. Cardozo
                                  (Cal. SBN 173263)

                                  Attorney for Plaintiff-Appellant
                                  Genesis Merchant Partners, LP

# CERTIFICATE OF SERVICE

I hereby certify that, on March 25, 2014, I electronically filed this Appellant's Opening Brief and Appellant's Excerpts of Record (2 volumes) with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the Appellate CM/ECF System. All participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

DATED: March 25, 2014.

_____s/ Raymond A. Cardozo_____

Raymond A. Cardozo
(Cal. SBN 173263)

Attorney for Plaintiff-Appellant
Genesis Merchant Partners, LP

US_ACTIVE-115368455.12